# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# CIVIL ACTION NO. 1:13-CV-260-GCM-DCK

| | |
|---|---|
| RUTH A. NA-TUSCH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) **MEMORANDUM AND** |
| v. | ) **RECOMMENDATION** |
| | ) |
| CAROLYN W. COLVIN, | ) |
| **Acting Commissioner of Social Security,** | ) |
| | ) |
| Defendant. | ) |
| | ) |

**THIS MATTER IS BEFORE THE COURT** on Plaintiff's "Motion for Summary Judgment" (Document No. 10) and Defendant's "Motion for Summary Judgment" (Document No. 11). This case has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §636(b)(1)(B). After careful consideration of the written arguments, administrative record, and applicable authority, the undersigned will respectfully recommend that Plaintiff's "Motion for Summary Judgment" be <u>denied</u>; that Defendant's "Motion for Summary Judgment" be <u>granted</u>; and that the Commissioner's decision be <u>affirmed</u>.

## I. BACKGROUND

Plaintiff Ruth A. Na-Tusch ("Plaintiff"), through counsel, seeks judicial review of an unfavorable administrative decision on her application for disability benefits. (Document No. 1). On August 9, 2010, Plaintiff filed an application for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 405, alleging an inability to work due to a disabling condition beginning September 30, 2004. (Transcript of the Record of Proceedings ("Tr.") 18, 124-128). The Commissioner of Social Security (the "Commissioner" or "Defendant") denied Plaintiff's application initially on December 30, 2010,

and again after reconsideration on June 15, 2011. (Tr. 18, 68, 76). In its "Notice of Reconsideration," the Social Security Administration ("SSA") included the following explanation of its decision:

> The medical evidence shows that your condition was not severe enough prior to the end of your insured period to be considered disabling. The records show that there is insufficient evidence prior to 12/31/2009. More evidence was needed to fully evaluate the claim. Because we could not get this evidence, a disabling condition cannot be established. Therefore, based on all of the medical and non-medical evidence, we have decided that you were not disabled on or before coverage ended according to the Social Security Act.

(Tr. 89).

Plaintiff filed a timely written request for a hearing on July 1, 2011. (Tr. 18, 93-94). On June 4, 2012, Plaintiff appeared and testified at a hearing before Administrative Law Judge S.D. Schwartzberg ("ALJ"). (Tr. 18, 30-47). In addition, Dr. Norman Hankins, a vocational expert ("VE"), Holly J. Fairbairn, Plaintiff's attorney, and Plaintiff's witness, Glenn Frazier, appeared at the hearing. Id.

The ALJ issued an unfavorable decision on June 14, 2012, denying Plaintiff's claim. (Tr. 15-29). Plaintiff filed a request for review of the ALJ's decision on August 13, 2012, which was denied by the Appeals Council on August 1, 2013. (Tr. 18, 1-6). The June 14, 2012 ALJ decision thus became the final decision of the Commissioner when the Appeals Council denied Plaintiff's review request. (Tr. 1).

Plaintiff's "Complaint" seeking a reversal of the ALJ's determination was filed in this Court on October 4, 2013. (Document No. 1). On November 1, 2013, the undersigned was assigned to this case as the referral magistrate judge. Plaintiff's "Motion for Summary Judgment" (Document No. 10) and the "Memorandum in Support of Plaintiff's Motion for

Summary Judgment" (Document No. 10-1) were filed April 7, 2014; and Defendant's "Motion for Summary Judgment" (Document No. 11) and the "Memorandum in Support of the Commissioner's Motion for Summary Judgment" (Document No. 11-1) were filed May 29, 2014. The pending motions are ripe for disposition, and therefore, a memorandum and recommendation to the Honorable Graham C. Mullen is now appropriate.

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the Commissioner applied the correct legal standards. Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

The Fourth Circuit has made clear that it is not for a reviewing court to re-weigh the evidence or to substitute its judgment for that of the Commissioner – so long as that decision is supported by substantial evidence. Hays, 907 F.2d at 1456 (4th Cir. 1990); see also, Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); Hancock v. Astrue, 657 F.3d 470, 472 (4th Cir. 2012). "Substantial evidence has been defined as 'more than a scintilla and [it] must do more than create a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401).

Ultimately, it is the duty of the Commissioner, not the courts, to make findings of fact and to resolve conflicts in the evidence. Hays, 907 F.2d at 1456; King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979) ("This court does not find facts or try the case de novo when reviewing disability determinations."); Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976)

("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence, and that it is the claimant who bears the risk of nonpersuasion."). Indeed, so long as the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court disagrees with the final outcome. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

## III. DISCUSSION

The question before the ALJ was whether Plaintiff was under a "disability" as that term of art is defined for Social Security purposes, at any time between September 30, 2004, and the Plaintiff's date last insured.[1] (Tr. 18). To establish entitlement to benefits, Plaintiff has the burden of proving that she was disabled within the meaning of the Social Security Act. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

The Social Security Administration has established a five-step sequential evaluation process for determining if a person is disabled. 20 C.F.R. § 404.1520(a). The five steps are:

(1) whether claimant is engaged in substantial gainful activity - if yes, not disabled;

(2) whether claimant has a severe medically determinable physical or mental impairment, or combination of impairments that meet the duration requirement in § 404.1509 - if no, not disabled;

(3) whether claimant has an impairment or combination of impairments that meets or medically equals one of the listings in appendix 1, and meets the duration requirement - if yes, disabled;

---

[1] Under the Social Security Act, 42 U.S.C. § 301, the term "disability" is defined as an: inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (quoting 42 U.S.C. § 423(d)(1)(A)).

4

(4) whether claimant has the residual functional capacity ("RFC") to perform her/his past relevant work - if yes, not disabled; and

(5) whether considering claimant's RFC, age, education, and work experience he/she can make an adjustment to other work - if yes, not disabled.

20 C.F.R. § 404.1520(a)(4)(i-v). In this case, the ALJ determined at the fifth step that Plaintiff was not disabled. (Tr. 25).

Specifically, the ALJ first concluded that Plaintiff had not engaged in any substantial gainful activity from September 30, 2004, her alleged disability onset date, through December 31, 2009, her date last insured. (Tr. 20). At the second step, the ALJ found that degenerative changes of the spine, restless leg syndrome, a depressive disorder, and an anxiety disorder were severe impairments.[2] (Tr. 20). At the third step, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. 404, Subpart P, Appendix 1. (Tr. 21).

Next, the ALJ assessed Plaintiff's RFC and found that she retained the capacity to perform medium work activity, with the following limitations:

> [T]he ability to frequently perform postural activities of climbing, balancing, stooping, kneeling, crouching, and crawling except for no climbing ladders, ropes, and scaffolds; avoidance of concentrated exposure to hazards; and able to perform unskilled work.

(Tr. 22). In making this finding, the ALJ specifically stated that he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529

---

[2] The determination at the second step as to whether an impairment is "severe" under the regulations is a *de minimis* test, intended to weed out clearly unmeritorious claims at an early stage. See Bowen v. Yuckert, 482 U.S. 137 (1987).

5

and SSRs 96-4p and 96-7p." Id. The ALJ further opined that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (Tr. 23).

At the fourth step, the ALJ found that Plaintiff could not perform her past relevant work as a record clerk, desk clerk, or retail sales representative. (Tr. 23). At the fifth and final step, the ALJ concluded based on the testimony of the VE and "considering the claimant's age, education, work experience, and residual functional capacity" that jobs existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 25). Specifically, the VE testified that according to the factors given by the ALJ, occupations claimant could perform included patient transporter, dining room cafe attendant, dishwasher, child care worker, and stock clerk. (Tr. 25). Therefore, the ALJ concluded that Plaintiff was not under a "disability," as defined by the Social Security Act, at any time between September 30, 2004, and her date last insured, December 31, 2009. (Tr. 26).

Plaintiff on appeal to this Court makes the following assignments of error: (1) assessment of severe impairments at step two of the sequential evaluation; (2) assessment of pain; (3) assessment of credibility; (4) weight given opinion evidence; (5) development of the record; and (6) assessment of Plaintiff's mental limitations. (Document No. 10-1). The undersigned will discuss each of these contentions in turn.

**A.** **Severe Impairments**

In her first assignment of error, Plaintiff argues that the ALJ improperly applied the step-two standard in determining Plaintiff's headaches and heel spurs to be non-severe. (Document

No. 10-1, pp.4-5). Plaintiff alleges that in order for an impairment to be non-severe it must be a "'slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to do work, irrespective of age, education, or work experience.'" (Document No. 10-1, pp.4-5) (citing Evans v. Heckler, 734 F.2d 1012, 1014 (4th Cir. 1984)).

Moreover, Plaintiff asserts that the ALJ failed to address the limiting effects of Plaintiff's non-severe and severe impairments in combination, and only included a boilerplate reference to his duty to consider them in combination. (Document No. 10-1, p.5). Plaintiff argues at length that the ALJ's failure to consider the effects of Plaintiff's non-severe impairments represents significant error. (Document No. 10-1, p.6). Plaintiff contends that this error is prejudicial because the VE indicated that work-related limitations would result from proper consideration of Plaintiff's heel spurs. (Document No. 10-1, p.6).

In response, Defendant first emphasizes that the burden of proof and production to establish an impairment as severe lies with Plaintiff. (Document No. 11-1, pp.4-5) (citing 20 C.F.R. § 404.1520(c), Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995)). Defendant contends Plaintiff failed to meet her burden as it relates to headaches, heel spurs, and hypertension. (Document 11-1, p.5). Defendant further contends that the ALJ considered each of these impairments and the relevant evidence offered in the record, and reasonably found each of these impairments to be non-severe. (Document No. 11-1, p.5)

For example, Defendant notes that the ALJ based his analysis of the heel spurs on the lack of medical evidence during the relevant time period supporting Plaintiff's claim. (Document No. 11-1, p.5) (citing Tr. 21). Specifically, Defendant notes that the ALJ discussed

7

Plaintiff's heel spurs and the fact that she had not visited her podiatrist, Dr. Meyerberg, since 2000. Id.

In addition, Defendant echoes the ALJ's observation that Plaintiff's ER visit for a headache was two (2) years after the date last insured. Id. (citing Tr. 20, 316-19). Defendant also observes that Plaintiff failed to report headaches to her doctor during the relevant time period. Id. (citing Tr. 203, 206, 209, 212, 215, 218, 224, 229, 241). Defendant effectively notes that Plaintiff testified that her headaches were not "that often" and not "that severe" in 2009, but got worse later. Id. (citing Tr. 37).

The undersigned is not persuaded that the ALJ erred at step two in the evaluation. Rather, the ALJ specifically opined that he considered "limitations and restrictions imposed by all of the claimant's impairments, even those that are not severe." (Tr. 20). Moreover, the ALJ's decision indicates he relied upon substantial evidence supporting his finding as to the severity of Plaintiff's impairments. (Tr. 20-21).

**B.     Pain**

Next, Plaintiff challenges that the ALJ's pain assessment did not comport with the law and was not supported by substantial evidence. (Document No. 10-1, p.7). Plaintiff specifically asserts that the ALJ erred in his assessment of Plaintiff's functioning as related to degenerative impairments of the spine and restless leg syndrome; although Plaintiff acknowledges the ALJ found these impairments to be severe. (Document No. 10-1, p.7) (citing Tr. 20).

Plaintiff suggests that despite the lack of express testimony linking the restless leg syndrome with pain, the ALJ should have considered Plaintiff's resulting discomfort from the restless leg syndrome, in addition to the lumbar and cervical pain felt in her spine, in his analysis of Plaintiff's pain. (Document No. 10-1, pp.7-8). Plaintiff argues that the ALJ failed to meet his

8

"duty of explanation" in his analysis of the objective medical evidence of pain. (Document No. 10-1, p.9) (citing Hill v. Comm'r of Soc. Sec., 49 F.Supp.2d 865, 869 (S.D.W.Va.1999)). Plaintiff asserts that the ALJ must evaluate "'the intensity and persistence of the claimant's pain and the extent to which it affects his ability to work.'" (Document No. 10-1, p.9) (quoting Hines v. Barnhart, 453 F.3d 559, 565 (4th Cir. 2006)). Plaintiff alleges that the ALJ's boilerplate language regarding the objective medical evidence of pain failed to address a number of factors associated with determining pain and symptom features and the subsequent limitations on work function. (Document No. 10-1, pp.9-10). Plaintiff asserts the factors that should have been considered include location, duration, frequency, intensity of claimant's pain or other symptoms, factors that precipitate and aggravate symptoms, and the type, dosage, effectiveness, and side effects of any medication the claimant takes. (Document No. 10-1, p.9) (citing 20 CFR 404.1529(c)(2014)).

Defendant's response stresses that the ALJ must consider the entire record to assess pain. (Document No. 11-1, p.8). Specifically, Defendant asserts "[p]ain is not disabling per se, and subjective evidence of pain cannot take precedence over objective medical evidence or the lack there of." (Document No. 11-1, pp.8-9) (quoting Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986)). Defendant contends that even if the ALJ used boilerplate language, it is "harmless where the ALJ adequately explains his findings," and such was the case in this instance. (Document No. 11-1, p.9) (citing Filus v. Astrue, 694 F.3d 863, 868 (7th Cir. 2012)). Defendant states that the ALJ properly found Plaintiff's allegations to be less than fully credible, noting the following:

> 1) Plaintiff received only conservative treatment for physical impairments during the relevant period (Tr. 24; *e.g.*, Tr. 194, 203, 208, 218, 227, 239);

2) Plaintiff sought only medication from her primary care physician for her allegedly disabling mental condition (Tr. 24, 212-13);

3) Despite allegedly disabling mental illness, psychiatric exams by her physicians were generally benign (Tr. 24; *e.g.*, Tr. 201, 204, 207, 210, 213, 216, 222, 228, 235, 240);

4) Plaintiff was never psychiatrically hospitalized, despite allegedly disabling mental illness (Tr. 24);

5) Plaintiff cared for pets, did routine housework, used the internet, read, played video games, and did arts and crafts; these activities appeared inconsistent with her allegations of disabling pain and mental difficulties (Tr. 22; *e.g.*, Tr. 156, 158, 173, 175-78); and

6) Plaintiff could reportedly follow directions, get along with authority figures, had no problems interacting with others, and could handle stress and change (Tr. 24, 161, 178-79).

(Document No. 11-1, p.8)

Defendant next responds to Plaintiff's allegations that the ALJ failed to consider Plaintiff's pain from restless leg syndrome. (Document No. 11-1, p.9). Defendant explains that the ALJ specifically noted Plaintiff's testimony regarding pain associated with restless leg syndrome. (Document No. 11-1, p.9) (citing Tr. 23). Defendant further asserts that the ALJ properly noted that, "[T]here is no evidence that the claimant's restless leg syndrome results in any disabling limitations of function." (Document No. 11-1, p. 9) (quoting Document No. 10-1, p.15, quoting Tr. 23). Defendant contends that such a statement is accurate because there was "no objective evidence of such limitations. Plaintiff's argument for these limitations rests solely on her own, and her fiance's, subjective reports." (Document No. 11-1, p.9). Moreover, Defendant notes that the ALJ correctly found that Plaintiff received medication from her primary care physician, but never needed specialist evaluation or treatment. Id. (citing Tr. 23).

Defendant also asserts that despite Plaintiff's allegations to the contrary, the ALJ considered evidence after the date last insured. (Document No. 11-1, p.11) (citing Tr. 20, 23, 307-10, 316-19).

The undersigned is not persuaded by Plaintiff's arguments that the ALJ improperly assessed Plaintiff's pain. In fact, the ALJ specifically addressed Plaintiff's spine and restless leg syndrome, including treatment by Wellspring Family Practice and Dr. Katie Wilson of Wilson Family Chiropractic. (Tr. 23). Consistent with the ALJ's findings, the undersigned observes that even Plaintiff acknowledges that during most of the relevant time period, "from 2005-2008, miramex was effective as a treatment for the RLS." Document No. 10-1, p.10) (citing Tr. 228). Contrary to Plaintiff's allegations, it appears that the ALJ considered the evidence and adequately explained the basis for his analysis of Plaintiff's pain. (See Tr. 23-24).

**C.     Credibility**

Plaintiff also argues that the ALJ erred in his assessment of credibility. (Document No. 10-1, p.13). Plaintiff contends none of the "'gold standards'" for diminishing credibility, including "non-compliance, drug seeking, exaggerating, or malingering," are present in the case. (Document No. 10-1, p.13). Plaintiff alleges that the ALJ improperly "cherry-picked, without qualification from the record, evidence of daily activity." (Document No. 10-1, p.13).

Plaintiff states that while daily activities should be included in the ALJ's consideration, Plaintiff does not need to "deteriorate to a bedridden state to obtain benefits." (Document No. 10-1, p.14) (citing Totten v. Califano, 624 F.2d 10, 10 (4th Cir. 1980)). Plaintiff asserts that despite the fact the ALJ is urged to "'consider the qualifications a claimant states about capacity for activities and not selectively quote from the record or require objective evidence of pain or symptoms,'" he failed to do so. (Document No. 10-1, p.15) (quoting Hines, 453 F.3d at 559).

Plaintiff argues that even if the ALJ correctly assessed the Plaintiff's "Activities of Daily Living," Plaintiff would not have the capacity to do competitive work at the medium level. (Document No. 10-1, p.15).

Defendant argues that the ALJ appropriately considered the Plaintiff's daily activities when determining credibility. (Document No. 11-1, p.12). Contrary to Plaintiff's assertions, Defendant notes that daily activities are "probative in a credibility analysis." (Document No. 11-1, p. 12) (citing Mickles v. Shalala, 29 F.3d 918, 921 (4th Cir. 1994)).

Defendant contends that the ALJ appropriately considered Plaintiff's treatment record. (Document No. 11-1, p.11). Defendant notes that Plaintiff suggests that the ALJ improperly held the inability to afford care against Plaintiff; however, Defendant effectively argues that Plaintiff's contention is unpersuasive given that "to avoid a negative credibility inference from a failure to pursue treatment, Plaintiff must show she tried to get treatment but was denied due to lack of funds." (Document No. 11-1, p.11) (citing Smalls v. Comm'r of Soc. Sec., 2009 WL 691931, at *7 (D.S.C. Mar. 12, 2009)). Defendant asserts that "Plaintiff never offered any objective evidence that she was refused treatment." (Document No. 11-1, p.11). In fact, Defendant points out Plaintiff admitted she had insurance through her fiance at the hearing. (Document No. 11-1, p.11) (citing Tr. 45).

The undersigned is not persuaded that the ALJ improperly assessed Plaintiff's credibility.

**D.    Opinion Evidence**

Next, Plaintiff asserts that the ALJ erred in weighing the medical opinions. (Document No. 10-1, p.16). Plaintiff stresses that the ALJ must state the weight he gave each opinion. (Document No. 10-1, p.16). Plaintiff acknowledges that the ALJ stated he "gave little weight" to the State Agency Physicians' opinions, but argues that such a statement represents an error

because there were no state agency physicians' opinions within the record. (Document No. 10-1, p.16) (citing Tr. 24). Additionally, Plaintiff argues that the ALJ further erred by referring to a Single Decision Maker ("SDM") as a "physician" when SDMs have no medical credentials. (Document No. 10-1, pp.16-17) (citing Tr. 24).

Plaintiff contends that the information offered by the State Agency provides no medical evidence about Plaintiff's physical or mental residual functional capacity. (Document No. 10-1, p.17). Therefore, Plaintiff argues that the ALJ improperly based the RFC finding solely on personal speculation. (Document No. 10-1, p.17). While Plaintiff acknowledges that the relevant period in the case "is bereft of medical opinion on RFC," Plaintiff asserts that the ALJ improperly focused on the fact that Plaintiff "saw no specialists and had only conservative treatment." (Document No. 10-1, p.18).

Defendant asserts that the ALJ appropriately considered medical opinions in his analysis. (Document No. 11-1, p.12). Defendant argues that the ALJ properly considered the opinions of Drs. Wax, Warren, and Meyers. (Document No. 11-1, p.12) (citing Tr. 24, 65, 80-82). Defendant notes that these opinions each concluded that Plaintiff had not provided enough evidence to establish disability. Id. Defendant alleges that Plaintiff seemingly overlooked these medical opinions. (Document No. 11-1, p.12).

Although Defendant argues that the ALJ did not need to base the RFC on a medical opinion, Defendant points out that the ALJ did rely in part on the "state agency medical opinions." (Document No. 11-1, pp.12-13) (citing Tr. 24, 65, 80-82; Thacker v. Astrue, 3:11cv246, 2011 WL 7154218 (W.D.N.C. Nov. 28, 2011)) ("RFC finding is an administrative determination reserved to the ALJ").

The undersigned notes that in his opening statements at the hearing the ALJ noted the lack of medical evidence in the Record. (Tr. 32). Likewise, the SSA commented on the lack of sufficient evidence to establish disability in this case. (Tr. 66, 73, 80, 81, 84, 89). In addition, in deciding to give "little weight" to the State agency physicians, the ALJ decided to give Plaintiff "every benefit of the doubt" and based RFC on "her subjective complaints." (Tr. 24). The undersigned finds Defendant's arguments persuasive that the ALJ properly considered the opinion evidence within the record, limited though it was.

E.  **Development of the Record**

Next, Plaintiff alleges that the ALJ erred by failing to cure the record of the omission of a credible opinion suggesting RFC. (Document No. 10-1, p.19) (citing Nicholson v. Astrue, 1:09cv271-MR, 2010 2010 WL 4506997 (W.D.N.C. Oct. 29, 2010)). Plaintiff suggests the ALJ "appeared to disbelieve he had a duty to develop." (Document No. 10-1, p.19-20) (citing Tr.45-46). Plaintiff asserts there was prejudicial error given that due to Plaintiff's "own poverty and the ALJ's errors, she was deprived of medical opinion evidence stating, in work-related terms, the greater exertional and postural limitations that her uncontradicted testimony clearly demonstrates." (Document No. 10-1, p.20). Plaintiff argues the prejudicial effect is even more severe because the VE's testimony states that "if all the Plaintiff's testimony were accepted as true and correct (and his decision contradicted none of it), there would be no jobs she could perform." (Document No. 10-1, p.20) (citing Tr. 45).

Defendant notes inconsistencies within Plaintiff's statements regarding development of the record. (Document No. 11-1, p.13). Defendant points out that despite Plaintiff's statements at the hearing that there were no further medical records, Plaintiff now argues the record was incomplete. (Document No. 11-1, p.13) (citing Tr. 32; Document No. 10-1, pp.17-18).

Defendant persuasively argues that the record was "adequate" to make a decision. (Document No. 11-1, p.14). Specifically, Defendant alleges that given the medical opinions, years of treatment notes, and test results, this case does not trigger the ALJ's duty to further develop the record. (Document No. 11-1, p. 13) (citing Cook v. Heckler, 783 F.2d 1168, 1173 (4th Cir. 1986)). Additionally, Defendant notes that Plaintiff fails to demonstrate how further tests or consultations would have changed anything. (Document No. 11-1, pp.13-14).

Based on the foregoing, the undersigned is not convinced that the ALJ failed in his duty to develop the record. As noted at almost every stage of this process, Plaintiff has failed to establish sufficient evidence to support a finding of disability. The undersigned is not persuaded that the ALJ is at fault for failing to develop non-existent evidence related to the relevant time period. The burden remains on Plaintiff to prove that she was disabled within the meaning of the Social Security Act. Bowen, 482 U.S. at 146 n.5.

**F.     Mental Limitations**

Finally, Plaintiff argues that the ALJ erred in his assessment of Plaintiff's mental limitations. (Document No. 10-1, p.21) Plaintiff notes that the ALJ stated that "a depressive order" and "an anxiety disorder" were severe impairments. Subsequently, Plaintiff acknowledges that the ALJ found that Plaintiff had "'moderate' limitations in the broad category of concentration, persistence and pace." (Document No. 10-1, p.21).

Plaintiff asserts that the ALJ erred by failing to identify what impairments were responsible for the moderate difficulties, thus making his decision unreviewable. (Document No. 10-1, p.21). Plaintiff alleges that by making the decision unreviewable, it is difficult to determine if the record of the severity of Plaintiff's mental limitations was fairly developed. (Document No. 10-1, p.21). Plaintiff asserts that "unskilled work" is not a "shorthand expression

of mental limitations." (Document No. 10-1, p.22-23). Therefore, Plaintiff argues the ALJ erred in "failing to express a finding of moderate restrictions in concentration, persistence and pace in work-related terms in the RFC." (Document No. 10-1, p.23).

Defendant argues that the ALJ did not err in his paragraph B analysis. (Document No. 11-1, p.14). Specifically, Defendant contends that Plaintiff failed to cite any authority supporting her assertion that "the ALJ needed to explain which mental impairments caused the 'moderate' difficulties in his paragraph B analysis." (Document No. 11-1, p. 14) (citing Document No. 10-1, p.21). Defendant further contends that even if the ALJ did err on this issue, Plaintiff failed to show that further consideration would have changed the outcome of the case. (Document No. 11-1, p.14).

Defendant asserts that Plaintiff applied the wrong analysis to the step three listing 12.00 paragraph B. (Document No. 11-1, p.15). Defendant alleges that the analysis required at that step is not the same as the RFC analysis. (Document No. 11-1, p.15) (citing Charlton v. Comm'r of Soc. Sec., No. 1:11cv992, 2013 WL 5806169, at *8 (W.D. Mich. Oct. 29, 2013)). Defendant asserts that the analysis for paragraph B is much broader than "the RFC's narrow focus on *work* limitations." (Document No. 11-1, p.15).

Defendant argues that substantial evidence supported the ALJ's mental RFC limitation to unskilled work. (Document No. 11-1, p.15). Defendant asserts that while the ALJ did not do a "function-by-function" analysis, there was no error because it can be inferred that "the ALJ included a limitation to unskilled work as part of his mental impairment evaluation." (Document No. 11-1, p.15). Defendant alleges that the ALJ specifically considered Plaintiff's treatment records and daily activities when he determined that Plaintiff was not disabled. (Document No. 11-1, p.15). Defendant asserts, regardless of whether the ALJ committed an error at this point in

his analysis, Plaintiff failed to demonstrate any harm from such an error. (Document No. 11-1, p.16) (citing Shinseki v. Sanders, 556 U.S. 396, 410 (2009)). Specifically, Defendant points out that Plaintiff "does not show that further mental function analysis would have resulted in further limitations above those assessed." (Document No. 11-1, p.16).

While the undersigned acknowledges more detail within the ALJ's analysis of mental limitations might have been helpful, Plaintiff fails to demonstrate any significant error resulting from the ALJ's analysis. Therefore, the undersigned does not find the ALJ's analysis of Plaintiff's mental limitations warrants remand.

## IV. CONCLUSION

The undersigned finds that there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and thus substantial evidence supports the Commissioner's decision. Richardson v. Perales, 402 U.S. 389, 401 (1971); Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005). As such, the undersigned will recommend that the Commissioner's decision be affirmed.

## V. RECOMMENDATION

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that: Plaintiff's "Motion for Summary Judgment" (Document No. 10) be **DENIED**; Defendant's "Motion for Summary Judgment" (Document No. 11) be **GRANTED**; and the Commissioner's determination be **AFFIRMED**.

## VI. TIME FOR OBJECTIONS

The parties are hereby advised that pursuant to 28 U.S.C. § 636(b)(1)(C), and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained herein may be filed **within fourteen (14)**

**days** of service of same. Responses to objections may be filed within fourteen (14) days after service of the objections. Fed.R.Civ.P. 72(b)(2). Failure to file objections to this Memorandum and Recommendation with the District Court constitutes a waiver of the right to de novo review by the District Court. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005). Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal. Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Snyder v. Ridenhour, 889 F.2d 1363, 1365 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), reh'g denied, 474 U.S. 1111 (1986).

**IT IS SO RECOMMENDED**.

Date Signed: June 26, 2014

David C. Keesler
United States Magistrate Judge